**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

 **MICHAEL H.,**

                                            **Plaintiff,**

        **vs.**

                                                          **5:20-CV-417**
                                                          **(MAD)**

**ANDREW SAUL,** *Commissioner of*
*Social Security*,

                                    **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**THE DEHAAN LAW FIRM P.C.**          **JOHN W. DEHAAN, ESQ.**
300 Rabro Drive, Suite 101
Hauppauge, New York 11788
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **TIMOTHY SEAN BOLEN, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, Michael H., commenced this action on April 8, 2020, pursuant to 42 U.S.C. §§

405(g) and 1383(c), seeking review of a decision by the Commissioner of Social Security denying

Plaintiff's application for Social Security Disability Insurance ("SSDI").  *See* Dkt. No. 1.  On

1

February 12, 2018, Plaintiff filed an application for disability insurance benefits, alleging an onset date of February 9, 2018.  *See* Administrative Transcript ("Tr.") at 170-76.  Plaintiff's application was denied and he filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  *See id.* at 101-06, 109-10.  A hearing was held before ALJ Gretchen Mary Greisler on July 18, 2019.  *See id.* at 51-86.  On August 5, 2019, the ALJ issued a decision denying Plaintiff's application.  *See id.* at 10-20.  Plaintiff subsequently requested review by the Appeals Council and was denied such review.  *See id.* at 1-6.  Presently before the Court are the parties' cross-motions for judgment on the pleadings.  *See* Dkt. Nos. 15, 18.

## II. BACKGROUND

At the time of his application, Plaintiff was forty-four years old.  *See* Tr. at 170.  Plaintiff had completed high school as well as one year of college, and previously worked for twenty-three years in the military.  *Id*. at 80.  Plaintiff also worked as an electrician, an electrical communications repair person, and as an administrative clerk.  *Id*. at 201.  The record indicates that Plaintiff suffers from a variety of conditions, including post-traumatic stress disorder ("PTSD"), persistent depressive disorder, chronic allergic conjunctivitis of both eyes, a left clavicle fracture with residual pain, a non-united scaphoid fracture of the right wrist, onychocryptosis bilateral hallux [sic], lower spine spondylosis, and tinnitus.  *Id*. at 89.

During Plaintiff's military service, he suffered a series of injuries.  In 2009, Plaintiff sustained a head injury when exposed to a blast during his combat deployment.  *Id*. at 580. Plaintiff also experienced two other head injuries during his adolescence.  *Id*.  While in the military, Plaintiff also hurt his ankle while climbing in and out of vehicles on the ranges, and

suffered a knee injury, a wrist injury, and a back injury. *Id*. at 64-70. Plaintiff also witnessed the

death of his fellow soldiers while deployed. *Id*. at 705. As a result of his military service,

Plaintiff suffers from recurrent nightmares, hyperstartled responses, hypervigilance, avoidance,

and anger outburst. *Id*.

Following being honorably discharged from the army, Dr. Thompson of the VA Medical

Center diagnosed Plaintiff with PTSD during a November 2017 Compensation and Pension

examination. *Id*. at 430-36. Following his diagnosis, Plaintiff's symptoms improved with

medication and he denied needing psychotherapy because his symptoms did not limit his life in a

way that bothered him. *Id*. at 662, 672-73, 680, 696. It does not appear that Plaintiff was able to

gain relief of his hypervigilance when in crowds. *Id*. at 660, 662, 669. However, Plaintiff's

progress notes report that these symptoms were relatively mild. *Id*. at 660, 662.

### III. DISCUSSION

#### A.   Standard of Review

A person is disabled when he is unable "to engage in substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating

disability claims:

> "In essence, if the Commissioner determines (1) that the claimant
> is not working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one [listed in Appendix 1 of the regulations]
> that conclusively requires a determination of disability, and (4)
> that the claimant is not capable of continuing in his prior type of

> work, the Commissioner must find him disabled if (5) there is not
> another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)) (other citation omitted).  "The claimant bears the burden of proof on

the first four steps, while the Social Security Administration bears the burden on the last step."

*Id.* (citation omitted).

In reviewing a final decision by the Commissioner under Title 42, United States Code

Section 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C.

§§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Court must examine the Administrative Transcript to ascertain whether the

correct legal standards were applied, and whether the decision is supported by substantial

evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496,

501 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere

scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even

where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*,

805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

1982)) (other citations omitted).  In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo

review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 9, 2018, the alleged onset date. *See* Tr. at 12.  At step two, the ALJ concluded that Plaintiff had the following severe impairments: non-union of a right wrist fracture status post open reduction and internal fixation surgery, degenerative disease of the lumbar spine, PTSD, and depression. *See id.*  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 13.  The ALJ then found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant requires a brief one- to two-minute change in position after sitting, standing or walking for 30 minutes but the claimant retains the ability to remain on task.  He can occasionally stoop, balance, crouch, kneel, and climb stairs and ramps but cannot crawl, climb ladders, ropes, or scaffolds or work at unprotected heights or in close proximity to dangerous machinery.  The claimant can lift up to ten pounds occasionally with the dominant upper extremity and can frequently reach, handle, finger, and feel with the dominant upper extremity.  He can understand, follow, and retain simple instructions and perform simple tasks in a non-production-pace workplace; occasionally interact with the public, coworkers, and supervisors; and he can tolerate only occasional changes in the work setting.  The claimant cannot tolerate working around crowds of people or in a more than moderate noise level environment as that term is defined in the Selected Characteristics of Occupations.

*Id.* at 15.  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *See id.* at 18.  At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert.  *See id.* at 19.  The vocational expert testified that a hypothetical individual of Plaintiff's age, with his education, past relevant work experience, and RFC could perform the representative occupations of order caller and office helper.  *See id.*  The ALJ relied on this testimony to determine that Plaintiff is not disabled as defined by the Social Security Act.  *See id.*

### C.    Analysis

#### 1. Weighing the Opinion Evidence

Plaintiff asserts that the ALJ erred by failing to properly consider the medical opinions of Dr. Dante Alexander and Dr. Thompson.[1]  Dkt. No. 15 at 19-26.  Plaintiff claims that the ALJ inadequately explained her reasons for finding Dr. Alexander's opinion unpersuasive and failed to examine the length of the consultative examinations, and finally, that the ALJ improperly failed to examine Dr. Thompson's notes in Plaintiff's medical records.  *Id.* at 19, 21, 23.

"The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded."  *Harry B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-227, 2021 WL

---

[1] When discussing the weight the ALJ afforded the medical opinions, Plaintiff made a passing reference to the inadequate examination of Dr. Lorensen's opinion. Dkt. No. 15 at 22.  However, as Plaintiff has failed to advance any specific argument regarding the weight afforded to Dr. Lorensen's opinion, the Court deems this argument waived.  *Chun Qu Zhang v. Mukasey*, 296 Fed. Appx. 177, 178 (2d Cir. 2008) ("A petitioner waives an argument where, as here, he points to no error in the agency's findings and devotes only a single, conclusory sentence to challenging the agency's denial of relief").  To the extent Plaintiff has made a colorable argument that the length of Dr. Lorensen's examination was inappropriate, the Court rejects this argument for the same reasons outlined below.

1198283, *6 (N.D.N.Y. Mar. 30, 2021).  "According to the new regulations, the Commissioner

'will no longer give any specific evidentiary weight to medical opinions; this includes giving

controlling weight to any medical opinion.'"  *Id*. (quoting Revisions to Rules Regarding the

Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at

5867–68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  "Instead, the Commissioner

must consider all medical opinions and 'evaluate their persuasiveness' based on the following five

factors: supportability; consistency; relationship with the claimant; specialization; and 'other

factors.'"  *Id*. (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)).

> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and
> assigning "weight" to a medical opinion, the ALJ must still
> "articulate how [he or she] considered the medical opinions" and
> "how persuasive [he or she] find[s] all of the medical opinions.". . .
> An ALJ is specifically required to "explain how [he or she]
> considered the supportability and consistency factors" for a medical
> opinion. . . .  Under the new regulations an ALJ must consider, but
> need not explicitly discuss, the three remaining factors in
> determining the persuasiveness of a medical source's opinion. . . .
> However, where the ALJ has found two or more medical opinions
> are equally well supported and consistent with the record, but are
> not exactly the same, the ALJ must articulate how he or she
> considered those factors contained in paragraphs (c)(3) through
> (c)(5).

*Id*. (citations omitted) (alterations in original).

The ALJ's failure to examine a medical opinion may or may not be grounds for remand.

*Reider v. Colvin*, No. 15-CV-6157P, 2016 WL 5334436, *6 (W.D.N.Y. Sept. 23, 2016).  Where

the ALJ's failure resulted in a harmless error, remand is typically not warranted.  *See id*.; *Fiducia*

*v. Comm'r of Soc. Sec*., No. 1:16-CV-1317, 2017 WL 4513405, *4 (N.D.N.Y. Oct. 10, 2017).

However, a court is not permitted to examine an ALJ's opinion and determine the weight assigned to the medical opinion. *Id*. (citations omitted). Thus, at a minimum, "the ALJ's decision [must] reflect[] that the opinion was considered or [that] the limitations assessed in the opinion are ultimately accounted for in the RFC." *Id*. (citing *Hamilton v. Astrue*, No. 12–CV–6291P, 2013 WL 5474210, *16 (W.D.N.Y. 2013)). Where the ALJ's opinion lacks any review of the medical opinion, the Court is unable to examine whether the error was harmless. *Id*. However, absent evidence to the contrary, an ALJ's failure to articulate why she rejected an opinion that is less restrictive than the RFC determination is a harmless error. *See Fiducia*, 2017 WL 4513405, at *4 (citing *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009); *Blabac v. Comm'r of Soc. Sec*., No. 3:08-CV-0849, 2009 WL 5167650, *9 (N.D.N.Y. Dec. 18, 2009)).

### a. Dr. Alexander's Opinion

Dr. Alexander conducted a consultative psychiatric evaluation of Plaintiff on January 4, 2019. Tr. at 705-07. Dr. Alexander noted that during the examination, Plaintiff was cooperative, had appropriate social skills, was dressed appropriately, well groomed, coherent, goal-oriented, and had appropriate speech and thought. *Id*. at 706. Dr. Alexander also noted that while Plaintiff experienced mild impairments in his memory due to nervousness in the evaluation, he had intact attention and concentration, average intellectual functioning, and good insight and judgment. *Id*.

Dr. Alexander noted that Plaintiff had no limitations in most categories of mental function, except for mild limitations interacting with others, concentrating, working at a consistent pace, regulating emotions, and controlling his behavior. *Id*. at 707. Dr. Alexander opined that these

difficulties were caused by distractibility and that his prognosis was good-to-fair and expected to improve within six months.  *Id*.  Significantly, Dr. Alexander stated that Plaintiff's impairments were not "significant enough to interfere with [his] ability to function on a daily basis."  *Id*.

Despite Dr. Alexander's opinion, the ALJ found that Plaintiff experienced moderate limitations in interacting with others, concentrating, persisting or maintaining pace, adapting or managing oneself, and in understanding, remembering, or applying information.  *Id*. at 14.  The ALJ limited Plaintiff's RFC to simple tasks in a non-production-pace workplace, with only occasional interaction with the public, coworkers, and supervisors, only occasional changes in the work setting, and no working around crowds of people or in a more than moderate noise level environment.  *Id*.  Said limitations are significantly more restrictive than those found in Dr. Alexander's opinion.

Upon review of Dr. Alexander's opinion, the ALJ stated that it was not persuasive but was supported by his mental status examination findings.  Tr. at 17.  However, the ALJ failed to continue her analysis with her sentence cutting off without providing her reasons.  *Id*.  Plaintiff claims that this error requires remand.  The Court disagrees.  While the ALJ's failure to continue her analysis clearly presents a procedural error, it does not warrant remand as Dr. Alexander's opinion was less restrictive than the RFC.  Thus, remand would not result in any changes to the outcome of Plaintiff's case.  The ALJ's error is therefore harmless and remand is not required.  *See Fiducia*, 2017 WL 4513405, at *4.

**b. Dr. Thompson's Note**

9

Plaintiff asserts that the ALJ erred by failing to explicitly consider and state her reasons for rejecting the November 16, 2017 opinion of Dr. Thompson.  Dkt. No. 15 at 20.

On November 16, 2017, Plaintiff was evaluated by Dr. Thompson at the Syracuse VA Medical Center during a Compensation and Pension examination.  Tr. at 430-36.  Dr. Thompson did not provide a formal opinion regarding Plaintiff's abilities in spite of his medical impairments.  However, Dr. Thompson did include a rather detailed progress note in Plaintiff's medical record detailing Plaintiff's medical history and his current diagnosis.  *Id*.  Under Section 9, "Remarks," Dr. Thompson stated that Plaintiff was experiencing PTSD caused by his military service.  *Id*. at 435.  Additionally, Dr. Thompson stated, "the veteran['s] symptoms are moderate.  They do **result** in moderate and persistent impairments in, essentially, all areas of his psychosocial functioning." *Id*. at 436 (emphasis in original).  Finally, it was noted that

> In a typical competitive work setting commensurate with the veteran['s] history and training[,] his current PTSD symptoms would put him at risk for persistent and moderate disruptions[,] particularly in his ability to maintain appropriate behavioral and emotional stability in work relationships.  His symptoms would also potentially cause problems regarding his capacity to focus on [and] carryout work-related activities [in] a reliable and consistent manner.

*Id*.

"A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."  20 C.F.R. § 404.1513(a)(2).  A medical opinion discusses the plaintiff's ability to perform physical demands of work activities; mental demands of work activities; other demands

of work; and adapt to environmental conditions.  *Id.*  A medical opinion need not be based on a formal medical examination.  *Id.* § 404.1545(a)(3).

For claims filed prior to March 27, 2017, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).  However, for claims filed after March 27, 2017, Congress removed the much more general language defining a medical source statement and added it to the definition of "other medical evidence."

For claims filed after March 27, 2017, "other medical evidence" includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).  "For claims filed . . . before March 27, 2017, other medical evidence does not include a diagnosis, prognosis, or a statement that reflects a judgment(s) about the nature and severity of your impairment(s)." *Id.*

Dr. Thompson's calculation does address Plaintiff's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2).  Specifically, the calculations discusses that Plaintiff's PTSD results in "moderate and persistent impairments," that Plaintiff would be "at risk for persistent and moderate disruptions," and he would have difficulty focusing on work

tasks, and maintaining appropriate behavioral and emotional stability in work relationships.  Tr. at

436.  However, it does not address what Plaintiff is capable of doing in spite of his limitations,

nor does it discusses Plaintiff's limitations with any specificity.

This note presents a close call on what is considered a medical source statement.  While it

discusses Plaintiff's limitations, it does not discuss what Plaintiff is still capable of doing.  *See* Tr.

at 430-36.  Under the previous regulations, what a plaintiff could do in spite of their impairments

was just one of the listed factors tending to establish the medical provider's judgments about the

nature and severity of the plaintiff's impairments.  *See* 20 C.F.R. § 404.1527(a)(1).  However,

under the new regulations, a medical source opinion must do both.  *See* 20 C.F.R. §

404.1513(a)(2).

Under the previous regulations this opinion would likely have been considered a vague

medical opinion and the ALJ would have had a duty to recontact Dr. Thompson for clarification

as to Plaintiff's abilities.  *See Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013).  However,

Congress has explicitly moved this requirement to the front of the medical opinion analysis.

Indeed, Congress stated in its proposed revisions that the purpose of the revision was to

narrow the definition of medical opinions to evidence that described a claimant's functional

abilities and limitations.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence,

81 Fed. Reg. 62560-01.  As Congress has explicitly limited the scope of medical source opinions,

Dr. Thompson's examination note is not a medical opinion.

The ALJ therefore did not have a duty to specifically examine the persuasiveness of the

examination note provided by Dr. Thompson.  *See Smith v. Colvin*, No. 8:15-CV-0714, 2016 WL

4991610, *4 (N.D.N.Y. Sept. 19, 2016) (holding that where the "medical records do not constitute medical opinions, . . . the ALJ was not required to afford weight to the records").

### c. Examination of 20 C.F.R. § 404.1520c(c) factors

Plaintiff asserts that the ALJ erred by failing to explicitly consider the length, frequency, purpose, extent, and examining relationship between the consultative examiners and Plaintiff. Dkt. No. 15 at 21.  Plaintiff asserts that while the ALJ would not normally be required to examine these factors explicitly, because he raised issues regarding the length of his examination with the consultative examiners, the ALJ had an affirmative duty to discuss these factors.  *Id*. at 21-23.[2]

When considering medical opinions and prior administrative medical findings, the ALJ will consider the opinion's supportability, its consistency with other evidence, the physician's relationship with the plaintiff, including the frequency, purpose, and extent of the treating relationship, and the examining relationship, as well as the physician's specialization and any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c.  The ALJ, however, is only required to explain how they considered the supportability and consistency of the medical opinion.  *Id.*

Plaintiff claims that consultative examiners were required to examine Plaintiff for at least thirty or forty minutes.  Dkt. No. 15 at 21.  As they failed to do so, Plaintiff asserts that the ALJ was required to address this when examining the opinions.  *Id*.  Specifically, Plaintiff argues that,

---

[2] Plaintiff does not advance any argument as to why the ALJ was required to explicitly consider the frequency, purpose, extent, and examining relationship between the consultative examiners and himself despite the regulations explicitly stating that the ALJ had no such duty.  *See* Dkt. No. 15 at 21-22.  The Court declines to advance any arguments on Plaintiff's behalf, who is represented by counsel, and will consider this argument waived.  *Chun Qu Zhang*, 296 Fed. Appx. at 178.

"20 C.F.R. § 404.1519n(a)(3) explicitly instructs that a psychological CE requires 'at least 40 minutes.'  Similarly, an internal medicine, or general, CE requires 'at least 30 minutes' to complete."  *Id*. (quoting 20 C.F.R. § 404.1519n(a)(1)).  Plaintiff's assertion contains a glaring omission that results in a direct contradiction from what is stated in the regulations.  The regulation states, "[t]he following minimum scheduling intervals (i.e., time set aside for the individual, ***not the actual duration of the consultative examination***) should be used."  20 C.F.R. § 404.1519n (emphasis added).

Further, the "length" factor of § 404.1520c refers to the "[l]ength of the treatment relationship," not the length of an individual visit.  Plaintiff provides no other argument to support that the ALJ had a duty to explicitly examine the length of his examination by the consultative examiners despite the regulations explicitly providing that the ALJ had no such duty.  As such, the Court rejects that the ALJ erred by failing to do so.

Second, Plaintiff asserts that since he told the ALJ that the examination was "5, 10 minutes at the most," the ALJ had a duty to recontact Dr. Alexander to inquire as to the actual length of the examination.  Dkt. No. 15 at 21.  However, it is unclear what Plaintiff hoped to gain from the ALJ contacting Dr. Alexander.  Plaintiff does not assert that the ALJ did not believe the examination lasted for approximately ten minutes and contacting Dr. Alexander would have, at best, confirmed this.  Thus, the ALJ would not have had any more information had she recontacted Dr. Alexander.  Further, the ALJ found Dr. Alexander's opinion unpersuasive—and Plaintiff asserts that this was the correct determination.  *See id.* at 23.

Finally, an ALJ does not have a duty to recontact a physician "[i]f all of the evidence [she] receive[d], including all medical opinion(s), is consistent and there is sufficient evidence for [her] to determine whether [the claimant] [is] disabled." 20 C.F.R. § 404.1520b.  Plaintiff does not assert that the record was so deficient that the ALJ could not render an RFC determination. Similarly, Plaintiff does not address how contacting Dr. Alexander would have resulted in more evidence to allow the ALJ to make an RFC determination.  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim"); *see also Santiago v. Astrue*, No. 3:10-CV-937, 2011 WL 4460206, *2 (D. Conn. Sept. 27, 2011) (holding that where "[t]he plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist[,] . . . [t]hat argument is insufficient to carry his burden").

Plaintiff merely attempts to create a duty for the ALJ based on a misrepresentation of the regulations.  However, no such duty exists and Plaintiff has failed to demonstrate any harm from the ALJ's failure to contact Dr. Alexander.  The Court therefore rejects Plaintiff's assertion that the Court must remand his claim based on the ALJ's failure to properly weigh the medical opinions.

### 2. RFC Determination

Plaintiff asserts that the ALJ improperly evaluated his RFC by relying on raw medical data and substituting her judgment for that of the medical professionals.  Dkt. No. 15 at 26-27. The Court disagrees.

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). An individual's RFC is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff has the burden of establishing a diminished RFC. *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). "To properly determine [an] RFC, the ALJ must assess all relevant medical and other evidence in the record. . . . Such evidence includes, *inter alia*, objective medical evidence, medical opinions, medical history, clinical findings, and the claimant's own assessment of limitations." *Tamara L. v. Comm'r of Soc. Sec.*, No. 19-CV-621S, 2021 WL 1259298, *5 (W.D.N.Y. Apr. 6, 2021) (citations omitted).

However, the ALJ may not play doctor and fill gaps in the record with his lay opinion. *Primes v. Colvin*, No. 6:15-CV-06431, 2016 WL 446521, *4 (W.D.N.Y. Feb. 5, 2016). "Thus, even though the Commissioner is empowered to make the RFC determination, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the general rule is that the Commissioner 'may not make the connection himself.'" *Williams v. Berryhill*, No. 16-CV-283, 2017 WL 1370995, *3 (W.D.N.Y. Apr. 17, 2017) (alterations in original).

Regarding Plaintiff's physical RFC, the ALJ found that Plaintiff has the residual functional capacity to perform light work. Tr. at 15. However, the ALJ limited him to require a brief one to two-minute change in position after sitting, standing or walking for thirty minutes but found that he retains the ability to remain on task. *Id.* Plaintiff can also only occasionally stoop, balance,

crouch, kneel, and climb stairs and ramps, but cannot crawl, climb ladders, ropes, or scaffolds or work at unprotected heights or in close proximity to dangerous machinery.  Finally, the ALJ stated that Plaintiff could lift up to ten pounds occasionally with the dominant upper extremity but could frequently reach, handle, finger, and feel with the dominant upper extremity.  *Id.*

In her opinion, the ALJ specifically referenced Plaintiff's testimony regarding his limitations, the medical evidence in the record, Plaintiff's activities of daily living, and the opinion of Dr. Lorensen who opined that Plaintiff had moderate limitations for bending, lifting, reaching, pushing, and pulling with the right hand, and no limitations sitting, standing, walking, or handling small objects with both hands.  *Id.* at 14-17, 591.  The ALJ also examined opinions by Dr. Brauer and Ms. Fyffe, a registered physician's assistant.  *Id.* at 18.

Regarding Plaintiff's medical records, the ALJ focused on Plaintiff's bare medical findings.  *Id.* at 16-17.  The ALJ cited Plaintiff's CT scans, x-rays, and MRIs.  *Id.*  However, the ALJ also cited Plaintiff's occupational therapy records which "reflect[ed] treatment of back and left lower extremity pain, noting limited range of spinal motion and tenderness."  *Id.* at 17, 440-41.  The ALJ also noted that Plaintiff's records reflect that he "had relief with sitting and standing, but he had pain with transfers after sitting more than 25 minutes.  [Plaintiff] endorsed discomfort greater than 50 percent of the time, but less than 75 percent of the time.  Treatment records otherwise reflect a steady upright gait."  *Id.* at 17, 604, 649.  Thus, the ALJ stated that, "[t]hese signs do not warrant greater limitations than outlined above."  *Id.*

The ALJ also noted Plaintiff's activities of daily living.  *Id.* at 13.  While Plaintiff testified that he is not able to enjoy life and do many of his prior activities, he reported that he still watches

television, plays games, and engagedsin wood working, although less than before. *Id*. at 221. Plaintiff told his doctor that his activities of daily living include, walking, shopping, fishing, and camping. *Id*. at 653. Plaintiff's doctor even recommended that he increase his physical activity and aim to get to between thirty and forty-five minutes of exercise five to six days a week. *Id*. at 655.

Additionally, the ALJ examined the medical opinions of Dr. Lorensen, Dr. Brauer, and Ms. Fyffe. *Id*. at 18. She found Dr. Lorensen's opinion persuasive, Dr. Brauer's opinion generally persuasive, and Mr. Fyffe's opinion generally unsupported by the record with the exception of her opinion that Plaintiff could lift up to twenty pounds. *Id*. Ms. Fyffe opined that Plaintiff could occasionally lift up to twenty pounds, frequently lift up to five pounds, sit, stand, and walk for less than two hours a day, never climb or crawl, and occasionally balance, kneel, crouch, and stoop. *Id*. at 628. Additionally, she opined that Plaintiff could occasionally handle and finger with his right and left hands, and frequently reach and feel with both hands. *Id*. at 629.

Dr. Brauer opined that Plaintiff could occasionally lift up to twenty pounds and frequently ten pounds. *Id*. at 95. Dr. Brauer also found that Plaintiff could stand, walk, and sit for up to six hours a day and had an unlimited capacity to push, pull, reach, and feel with his hands. *Id*. However, he opined that Plaintiff had a limited ability to finger with his right hand. *Id*. The ALJ's RFC determination was notably more limiting than Dr. Brauer and Dr. Lorensen's opinions. *See id*. at 15, 93-97, 591-92.

While the RFC determination provided for fewer restrictions than Ms. Fyffe thought appropriate, Ms. Fyffe stated that she never treated Plaintiff for physical injuries and wrote that

the reviewer should refer to the orthopedic surgery medical records. *Id*. at 629.  The ALJ found that this opinion was not supported by Plaintiff's medical records. *Id*. at 17.  In fact, Plaintiff even testified at the ALJ hearing that he was capable of more than what Ms. Fyffe opined.  Plaintiff testified that he could lift between fifteen and twenty-five pounds frequently, he had no durational limitations for sitting so long as he could alter his position, and could stand for up to twenty minutes at a time as long as he was shifting his weight. *Id*. at 66-67.  Such statements directly support the ALJ's RFC determination of light work so long as Plaintiff could change his position every thirty minutes for at least one minute and could lift up to ten pounds.

Regarding Plaintiff's mental RFC, the ALJ stated that Plaintiff could "understand, follow, and retain simple instructions and perform simple tasks in a non-production-pace workplace; occasionally interact with the public, coworkers, and supervisors; and he [could] tolerate only occasional changes in the work setting." *Id*. at 15.  However, the ALJ found that Plaintiff could not "tolerate working around crowds of people or in a more than moderate noise level environment." *Id*.

The ALJ based this determination on Plaintiff's testimony, his medical records, and the opinions of Dr. Alexander and Dr. Hoffman. *Id*. at 15-17.  The ALJ's determination of Plaintiff's mental RFC was entirely based on his treatment notes and expert opinions and makes absolutely no reference to raw medical data. *See id*.  For example, the ALJ stated, "[r]ecords acknowledge [Plaintiff]'s report of difficulty in public and avoiding going to populated places, and note his complaints about his [spouse's] plans for a camping trip with four other couples." *Id*. at 17, 677.  "However, mental status examination findings have also consistently noted [that Plaintiff] was

cooperative and pleasant with good insight and judgment, and generally showed normal findings otherwise." *Id*. at 17, 428, 671, 679, 696.

When examining the medical opinions, the ALJ stated that the opinions of Dr. Alexander and Dr. Hoffman, which provided that Plaintiff had relatively few mental restrictions, were not persuasive. *Id*. The ALJ declined to embrace the greater abilities listed in the opinions and instead stated that Plaintiff could "tolerate only occasional changes in the work setting" and could not "tolerate working around crowds of people or in a more than moderate noise level environment." *Id*. at 15-17.

Further, the record demonstrates that following his diagnosis, Plaintiff's symptoms of PTSD improved with medication and he denied needing psychotherapy because his symptoms did not limit his life in a way that bothered him. *Id*. at 662, 672-73, 680, 696. It does not appear that Plaintiff was able to gain relief of his hypervigilance when in crowds. *Id*. at 660, 662, 669. However, Plaintiff's progress notes report that these symptoms were relatively mild. *Id*. at 660, 662. Such evidence lends additional support to the ALJ's opinion.

Plaintiff does not assert any specific issues with the ALJ's RFC determination and his argument that it was based on bald medical evidence is merely a recitation of case law with absolutely no analysis. Having determined that "the ALJ properly weighed all of the available evidence to make [her] physical RFC determination, and there is no indication that [s]he substituted [her] own opinion for that of any medical provider," the Court finds that the RFC determination is supported by substantial evidence. *Tamara L*., 2021 WL 1259298, at *7.

### 3. Weighing of Plaintiff's Credibility

Plaintiff asserts that the ALJ improperly evaluated his credibility because she used boilerplate language that his statements regarding his symptoms were not supported by the evidence and substituted her findings for those in the medical record.  Dkt. No. 15 at 27-28.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  *Genier*, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the ALJ will] consider all [of an individual's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence.  *Id*. at § 404.1529(c)(2).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier*, 606 F.3d at 49 (citing *Marcus v. Califano*, 615 F.2d 23, 27

(2d Cir. 1979)).  The ALJ must consider "all of the evidence of record, including [the plaintiff's] testimony and other statements with respect to his daily activities."  *Id*. at 50.

In *Cobb*, the plaintiff stated that his ability to participate in substantial gainful activity was impacted due to increased urination as a side effect of his medication.  *Cobb v. Astrue*, 613 F. Supp. 2d 253, 257 (D. Conn. 2009).  The plaintiff's assertions were not supported by the objective medical evidence.  *Id*. at 259.  The ALJ merely stated that, "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent they are inconsistent with the residual functional capacity assessment."  *Id*. at 258 (internal quotation marks omitted).  The court determined that there were inconsistencies in the record that the ALJ could properly have relied on to determine that the plaintiff's frequency of urination did not impact his ability to work.  *Id*.  However, the court noted that inconsistencies in the record are insufficient to affirm the ALJ's decision.  *Id*.  The court held that, the ALJ must "expressly assess" the plaintiff's credibility on the limitation raised, which necessarily requires stating the inconsistencies in his opinion.  *Id*. at 259-60.

Here, at step one, the ALJ determined that Plaintiff suffered from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.  Tr. at 16.  However, at step two, the ALJ stated that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the evidence."  *Id*.  Contrary to Plaintiff's assertion, the ALJ did examine inconsistencies in the record.  The ALJ acknowledged that while Plaintiff testified that he could only stand for about twenty minutes and walk about fifty feet, Dr. Lorensen opined that Plaintiff had no limitations

sitting, standing or walking. *Id*. at 16-17. Further, while Plaintiff testified that he cannot be around groups of people due to anxiety, his medical records indicate that he does not suffer from anxiety attacks and Dr. Alexander recorded only mild limitations in interacting adequately with supervisors, coworkers, and the public. *Id*. at 16-17, 661, 705.

Finally, Plaintiff asserts that the ALJ improperly discounted Plaintiff's military service and the fact that his symptoms only got better after he stopped working. Dkt. No. 15 at 28-29. This argument is not persuasive as the ALJ's determination as to whether Plaintiff is to be awarded benefits is focused primarily on the medical record, and a party's work history is just one factor to be considered and it alone has little effect on the weighing of a Plaintiff's credibility. *See Searles v. Comm'r of Soc. Sec*., No. 1:14CV1124, 2015 WL 9582726, *12 (N.D.N.Y. Nov. 30, 2015). Further, almost all claims examine medical records after an individual stops working as it is required that an individual not be engaged in any gainful activity in order to even apply for benefits. 20 C.F.R. § 404.1520 ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience").

The Court therefore rejects Plaintiff's assertion that the ALJ improperly evaluated his credibility. Having found no reversible error, the Court affirms the ALJ's determination.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 9 2021
       Albany, New York

Mae A. D'Agostino
U.S. District Judge